IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KAREN MOREY, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 18 C 1137 |
| | ) |
| McDONALD'S CORPORATION and McDONALD'S USA, LLC, | ) Judge Joan H. Lefkow<br>)<br>) |
| Defendants. | ) |

## OPINION AND ORDER

Karen Morey, individually and on behalf of a putative class, has sued McDonald's Corporation and McDonald's USA, LLC (collectively, McDonald's), alleging violations of Title III of the Americans with Disabilities Act (the ADA), 42 U.S.C. §§ 12181 *et seq.*, and California's Unruh Civil Rights Act (the Unruh Act), Cal. Civ. Code §§ 51 *et seq*. McDonald's moves for summary judgment. (Dkt. 64.) For the reasons stated herein, McDonald's motion is granted.[1]

## BACKGROUND[2]

Morey suffers from macular degeneration that has left her with 20/50 vision when wearing corrective lenses and has resulted in her experiencing blurriness and fogginess in her left

---

[1] The court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367. Venue is proper under 28 U.S.C. § 1391(b)(1).

[2] Unless otherwise noted, the facts set out below are taken from the parties' Local Rule 56.1 statements and are construed in the light most favorable to the non-moving party. The court will address many but not all the factual allegations in the parties' submissions, as the court is "not bound to discuss in detail every single factual allegation put forth at the summary judgment stage." *Omnicare, Inc.* v. *UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). Following its regular practice, the court has considered the parties' objections to the statements of facts and includes in its opinion only those portions of the statements and responses that are appropriately supported and relevant to the resolution of this motion. Any facts that are not controverted as required by Local Rule 56.1 are deemed admitted.

eye. (Dkt. 95, D's Resp. to P's LR 56.1 Stmt. ¶¶ 1-2.) She has been informed by a physician that driving at night is not recommended for someone with her condition.[3] (Dkt. 95 ¶ 5.) Her most recent driver's license expired in 2014 and she reports being unsure whether she could currently pass a driver's test. (*Id.* ¶ 4; Dkt. 86, P's Resp. to D's LR 56.1 Stmt. ¶ 7.) Nevertheless, she drove a car as recently as November 2018 and is capable of reading both form documents and the menu at a drive-thru while sitting in a car. (Dkt. 86 ¶¶ 3-4, 6.)

One night in February 2017, Morey got off work at a Wal-Mart in Orange, California, and walked to a nearby McDonald's restaurant on North Tustin Avenue (the "North Tustin restaurant") to buy food. (*Id.* ¶¶ 6-7.) The North Tustin restaurant is a franchised restaurant owned and operated by K&D Hospitality Group I. (Dkt. 86 ¶ 27.) McDonald's owns the real estate on which the restaurant stands and leases it to K&D. (Dkt. 95 ¶ 56.)

Morey arrived at the North Tustin restaurant shortly after 11 p.m. (*Id.* ¶ 7.) Pursuant to a policy implemented by K&D, the lobby was closed between the hours of 11 p.m. – 6 a.m. for the security and safety of employees, but the drive-thru remained open. (Dkt. 86 ¶ 28.) Seeing that the lobby was closed, Morey walked to the drive-thru lane and asked to place an order, but she was refused because store policy permits only customers in cars to use the drive-thru. (Dkt. 95 ¶¶ 7-8; dkt. 86 ¶ 14.) Morey did not inform the restaurant employees of her vision impairment in the course of their conversation at the drive-thru, and she admits that they did not have reason to know of it. (Dkt. 86 ¶¶ 16-17.) She did not ask to speak to a manager or follow up with the restaurant in an attempt to receive service after she left that night. (*Id.* ¶ 18.)

---

[3] In support of this asserted fact, Morey relies on a California Department of Motor Vehicles Vision Examination form signed by Rebecca Kramer, who is identified as an O.D. or M.D, in November 2018. (Dkt. 92-11.) McDonald's correctly objects to this document on the ground that it is hearsay if offered to prove Morey's medical condition. (Dkt. 95 ¶ 6.) For now, the court will assume that Dr. Kramer could be called as a witness to testify to her findings, even though Morey has failed to submit an appropriate affidavit.

Morey subsequently brought the present suit, claiming that her vision impairment constitutes a disability that McDonald's failed to reasonably accommodate. Morey proposes two accommodations she believes McDonald's should have made: (1) allowing her to order by phone and then handing the food out to her through a lobby door; or (2) paying a third-party delivery service to deliver food to her house. (Dkt. 91 at 7.)

McDonald's moves for summary judgment on multiple grounds, including that Morey's vision impairment does not constitute a disability under the ADA. The court agrees with McDonald's on that ground and grants the motion.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). To determine whether any genuine fact issue exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c). In doing so, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott* v. *Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769 (2007). The court may not weigh conflicting evidence or make credibility determinations. *Omnicare*, 629 F.3d at 704.

The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must designate

3

specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). If a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex*, 477 U.S. at 323–24.

## ANALYSIS

### I. Standing

Morey brings suit under Title III of the ADA, which generally prohibits discrimination in places of public accommodation, such as the North Tustin restaurant. 42 U.S.C. §§ 12181–12189. In order to have standing under Title III, "a plaintiff must allege past injury under the ADA; show that it is reasonable to infer from her complaint that this discriminatory treatment will continue; and show that it is also reasonable to infer, based on the past frequency of her visits and the proximity of the public accommodation to her home, that she intends to return to the public accommodation in the future." *Scherr* v. *Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) (internal punctuation and citation omitted). McDonald's argues that Morey lacks standing because she has no "specific intent" to return to the North Tustin restaurant and has no practical means of visiting the restaurant on foot during late-night hours because doing so would require her to take a bus that she could only catch by walking eight blocks on which there are no sidewalks or streetlights. (Dkt. 75 at 19; dkt. 100 at 22.)

Morey testified in her deposition, however, that prior to her February 2017 visit, she historically had visited the restaurant once every 1-3 months. (Dkt. 86 ¶ 19.) She also testified that she "probably" would go back to the restaurant when it reopens after remodeling.[4] (Dkt. 86 ¶ 22.) She testified that it would be a "challenge" for her to walk the eight blocks because of the

---

[4] As of the time of summary judgment briefing, the North Tustin restaurant had been demolished and was being rebuilt; Morey's deposition testimony referred to a planned visit after the new facility is constructed. (Dkt. 86 ¶ 21.)

lack of sidewalks and streetlights, and acknowledged that she had never previously done so, but there is no evidence that it would be anywhere close to impossible. (*Id.* ¶ 26.) This evidence is, at a minimum, sufficient to create a genuine issue of fact as to Morey's standing.

## II. Whether Morey Is Disabled As Defined By The ADA

Courts examine three elements in determining whether a plaintiff is disabled as defined by the ADA: "First, we must determine whether the condition claimed was a physical or mental impairment. Second, we identify the life activity upon which [plaintiff] relies and determine whether it constitutes a major life activity under the ADA. Third, we determine whether the impairment substantially limited this major life activity." *Sinkler* v. *Midwest Prop. Mgmt. Ltd. P'ship*, 209 F.3d 678, 683 (7th Cir. 2000) (internal punctuation omitted) (citing *Bragdon* v. *Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 2202 (1998)).

McDonald's does not dispute that Morey has a vision impairment but challenges the latter two elements.[5] (Dkt. 75 at 21-22.) Morey responds that her vision impairment substantially limits the major life activity of driving. (Dkt. 91 at 25-26) ("the 'major life activity' implicated by [this] lawsuit is driving automobiles").

The ADA defines major life activities as including, but not being limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Morey argues that driving should be included as an unenumerated activity under this statute, but that argument runs headlong into the Seventh

---

[5] Morey argues in a footnote that McDonald's "does not appear to dispute that driving is a major life activity." (Dkt. 91 at 25 n. 83.) To the contrary, McDonald's brief states the "inability to drive at night is not, in itself, a substantial limitation on a major life activity for purposes of the ADA," citing *Ramos* v. *Toperbee Corp.*, 241 F. Supp. 3d 305, 329-30 (D.P.R. 2017). (Dkt. 75 at 22.) The cited-to part of *Ramos* expressly held that "the fact that Plaintiff cannot drive at night, by itself, is insufficient" to constitute a disability under the ADA. *Id.* at 329. The argument thus was squarely raised.

5

Circuit's holding that "driving is not, in itself, a major life activity." *Winsley* v. *Cook County*, 563 F.3d 598, 603 (7th Cir. 2009); *Kimble* v. *Potter*, 390 F. App'x 601, 603 (7th Cir. 2010) (unpublished) ("Our decision in *Winsley* is consistent with every federal appellate decision on the issue"). That comes close to settling the issue, but two further ideas are worthy of discussion.

First, *Winsley* was decided under the law as it stood prior to the ADA Amendments Act of 2008 (the "ADAAA"). *Winsley*, 563 F.3d at 598 n. 1. The ADAAA generally liberalized the definition of disability and, as relevant here, stated that a major life activity need not be one that is "of central importance to most people's daily lives" and that the term "major" should not be "interpreted strictly." P.L. 110–325, 122 Stat 3553, § 2(b); *see Horgan* v. *Simmons*, 704 F. Supp. 2d 814, 818 n.1 (N.D. Ill. 2010). Nevertheless, the ADAAA also amended the list of activities expressly identified as major life activities and elected not to include driving among them, despite the fact that multiple Courts of Appeals had already held that driving was not a major life activity. *See Capobianco* v. *City of New York*, 422 F.3d 47, 58 n.7 (2d Cir. 2005). Furthermore, the EEOC's current ADA regulations do not list driving as a major life activity. 29 C.F.R. § 1630.2. The Seventh Circuit in *Winsley* cited those facts as supporting its decision even under the post-ADAAA landscape. *Winsley*, 563 F.3d at 603 n. 2.

Second, an inability to drive may still create a disability if it impairs an activity separately recognized as a major life activity. *Id.* at 604. The Seventh Circuit has held that an inability to drive constitutes a disability where it excludes a plaintiff from a general class of jobs. *Powers* v. *USF Holland. Inc.,* 667 F.3d 815, 822 (7th Cir. 2011) (driving meets the major life activity requirement where an otherwise-qualified truck driver can no longer drive a truck) (citing *Best* v. *Shell Oil Co.,* 107 F.3d 544 (7th Cir. 1997)). Thus, an inability to drive conceivably would entail a substantial limitation on recognized major life activities like caring for oneself or eating if

driving were effectively necessary for a plaintiff to obtain food. Morey makes no argument that such is the case here, however. Her complaint is limited to her inability to obtain food at restaurants with drive-thru-only service at night, such as the North Tustin restaurant.

Finally, it bears mention that Morey does not contend that she is impaired in the major life activity of seeing. She has 20/50 vision with corrective lenses and concedes that she can read form documents and the McDonald's menu in the drive-thru lane while sitting in a car. (Dkt. 86 ¶¶ 3-4.) Morey in fact admits that she drove a car until November 2018—well after the February 2017 incident that triggered this lawsuit—when she stopped doing so because her car required repairs. (*Id.* ¶ 6.)

For these reasons, the court concludes there is no genuine issue as to the material fact that Morey is not substantially limited in a major life activity as defined by the ADA.

### III.   McDonald's Other Arguments

McDonald's also argues that summary judgment is appropriate on Morey's ADA claim because (1) McDonald's is not liable as a lessor or operator of the North Tustin restaurant; (2) McDonald's was unaware of her disability; (3) Morey had reasonable access to McDonald's food; (4) Morey's disability was not the "but for" cause of her inability to purchase food; and (5) Morey's proposed accommodations are unreasonable. (Dkt. 75 at 1.) Because the court grants summary judgment on other grounds, it does not reach those arguments.

### IV.   Unruh Act Liability

Morey's claim under the Unruh Act is predicated on her ADA claim. (*See* dkt. 91 at 30); Cal. Civ. Code § 51(f); *Lentini* v. *California Ctr. for the Arts, Escondido*, 370 F.3d 837, 847 (9th Cir. 2004) ("the same standards for liability apply under both" the Unruh Act and the ADA). As such, that claim fails for the same reasons.

## CONCLUSION AND ORDER

For the foregoing reasons, McDonald's motion for summary judgment is granted.

Date: May 19, 2020

_____
U.S. District Judge Joan H. Lefkow